1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7          FOR THE WESTERN DISTRICT OF WASHINGTON
                          AT SEATTLE
8    JANE DOE,

9                    Plaintiff,                    CASE NO. 2:24-cv-01235-RSL

10         v.
                                                   ORDER GRANTING IN PART THE
11   G6 HOSPITALITY, LLC, *et al.*,                G6 DEFENDANTS' MOTION TO
                                                   DISMISS
12                   Defendants.

13

14         This matter comes before the Court on a "Rule 12(b)(6) Motion to Dismiss

15   Plaintiff's Complaint" filed by defendants G6 Hospitality, LLC, G6 Hospitality IP, LLC,
16
     G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, and G6 Hospitality
17
     Franchising, LLC (collectively, "the G6 defendants"). Dkt. # 31. Plaintiff alleges that the
18
19   G6 defendants harbored her at one of their franchised properties, Studio 6 in Mountlake

20   Terrace, Washington, [1] knowing that she was being forced to engage in commercial sex

21   and benefited from their participation in a venture which they knew or should have known

22   involved sex trafficking. Plaintiff asserts claims against the G6 defendants under the
23
     Trafficking Victims Protection Reauthorization Act ("TVPRA"), alleging that they are
24

25

26
     _____
     [1] The Complaint refers to this property as both Studio 6 and Motel 6.

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 1

liable under the TVPRA as perpetrators (18 U.S.C. § 1591(a)(1)) and beneficiaries (18 U.S.C. § 1591(a)(2)) of sex trafficking based on their own conduct and the conduct of their agents at the branded property. The G6 defendants seek dismissal of all of plaintiff's claims, arguing that the majority of the TVPRA claims are time-barred and that all claims fail as a matter of law.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 2

1
2
3
4
5
6

> plain statement of the claim showing that the pleader is entitled to relief."
> Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions'
> or 'a formulaic recitation of the elements of a cause of action will not do.'"
> *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus,
> "conclusory allegations of law and unwarranted inferences are insufficient to
> defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th
> Cir. 2004).

7
8
9
10
11

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

12

### BACKGROUND[2]

13
14
15
16
17
18
19
20
21
22

Plaintiff alleges that she was forced to engage in commercial sex acts at a Studio 6 hotel that is owned and operated by Old West 6017, LLC ("Old West") in Mountlake Terrace, Washington. Dkt. # 1 at ¶¶ 7 and 15. The G6 defendants allegedly own the property on which the Studio 6 is located and control the Studio 6 brand, which they allow Old West to use through a franchise agreement. Dkt. # 1 at ¶¶ 24 and 53. Plaintiff further alleges that she "was commercially sex trafficked for nearly two years straight [2007-2009] and then off and on at G6 Defendants' owned and operated locations . . . through September 2014. Dkt. # 1 at ¶¶ 7, 60, and 115. Plaintiff accuses the G6 defendants of:

23
24
25
26

---

[2] In this summary of the allegations, the Court has ignored conclusory assertions of knowledge and/or formulaic uses of statutory language, instead focusing on allegations of fact that might raise a plausible inference of knowledge, harboring, agency, and other elements of a TVPRA claim. The Court has also disregarded allegations of fact contained in plaintiff's opposition memorandum but not included in the complaint.

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 3

1. designing and promoting Studio 6 properties as extended stay hotels with kitchenettes and placing them near airports, freeways, other thoroughfares, and "in known trafficking areas/hubs" (Dkt. # 1 at ¶¶ 24 and 88);

2. developing employee training protocols, safety standards, human trafficking policies, and other standards for Studio 6 properties and requiring compliance with brand standards and all local, state, and federal laws  (Dkt. # 1 at ¶¶ 25(a), 25(o), 53, 56, and 58);

3. collecting a percentage of gross room revenues generated at each Studio 6 property through a franchise arrangement, allowing it to profit from the operations while avoiding the risks of owning/operating the hotels (Dkt. # 1 at ¶¶ 25(b) and 53);

4. sharing "a high degree of interrelated, intermingled, and unified operations" with Old West (Dkt. # 1 at ¶ 25(f));

5. jointly controlling and employing Old West's employees (Dkt. # 1 at ¶ 25(h));

6. designing, owning, supervising, controlling, and/or operating the Studio 6 in Mountlake Terrace (Dkt. # 1 at ¶ 25(r));

7. offering reservation services for Studio 6 that are anonymous and untraceable (Dkt. # 1 at ¶¶ 38, 46, and 59);

8. failing to take basic steps to identify and prevent trafficking in their hotels, such as requiring photo identification, not accepting daily cash payments, and issuing parking passes for guests only, so that they could continue profiting from the room rentals trafficking generated (Dkt. # 1 at ¶¶ 52, 61, 80-81, and 91-92);

9. failing to take responsibility and accountability for their inaction and knowingly profiting from sex trafficking ventures around the country, including at the Studio 6 in Mountlake Terrace (Dkt. # 1 at ¶ 102);

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 4

10. retaining control over when a branded hotel reports suspected criminal activity to the police and creating an internal hotline for hotel staff to report suspected human trafficking to the G6 defendants (Dkt. # 1 at ¶ 154(b) and (c));

11. retaining control over whether internet sites frequently used to solicit buyers for sex trafficking victims would be accessible at their branded properties (Dkt. # 1 at ¶ 154(m));

12. collecting and analyzing data from housekeeping services at the Mountlake Terrace property that revealed patterns consistent with trafficking (Dkt. # 1 at ¶ 154(o)); and

13. participating in a joint venture with or as alter egos of each other, making each G6 defendant vicariously liable for the actions and failures of every other G6 defendant (Dkt. # 1 at ¶ 171).

Plaintiff further alleges that the employees and managers at the Studio 6 in Mountlake Terrace knew that she was being coerced to have commercial sex and did nothing about it. She alleges that staff was on a first name basis with her trafficker, had conversations with him about sex trafficking, made two rooms in the back of the property available to him, ignored the stream of buyers entering and leaving the rooms, ignored the loitering, exchanges of money, and excessive sex paraphernalia that indicated trafficking, and would warn plaintiff's trafficker when the police were conducting sting operations at the property. Dkt. # 1 at ¶¶ 62-63, 115, 120-21, 128, 139, and 144. She alleges that staff observed obvious signs that she was being trafficked, such as crying, screams, beatings, visible injuries, visible distress, constant monitoring, and being dragged into the room kicking and screaming. Dkt. # 1 at ¶¶ 116-19. Plaintiff asserts that the Studio 6 employees

were agents of the G6 defendants, and their knowledge is imputed to the principal. Plaintiff further alleges that the G6 defendants knew she was being trafficked because they required the Studio 6 staff to report suspected criminal activity to the G6 defendants, they knew that hotels and motels in general, and their branded hotels in particular, had been used by traffickers looking for anonymity and privacy, they knew that the Studio 6 in Mountlake Terrace had been a hotspot of crime for years, and they inspected franchisee operations. Dkt. # 1 at ¶¶ 63, 82, 91, 93, 107, 110, and 148.

## DISCUSSION

Plaintiff alleges that the G6 defendants "harbored" her, as that term is used in the TVPRA, and that she was sold for sex for the benefit of both her traffickers and the G6 defendants. Dkt. # 1 at ¶ 7. Pursuant to 18 U.S.C. § 1595(a), victims of sex trafficking may bring a civil action against both the perpetrator and "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" sex trafficking.

A perpetrator is someone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). A person benefits from sex trafficking under § 1591(a)(2) if he, she, or it "knowingly . . . benefits, financially or by

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 6

receiving anything of value, from participation in a venture which has engaged" in sex trafficking. A civil claim under the TVPRA is subject to a ten-year statute of limitation. 18 U.S.C. § 1595(c).

**A. Statute of Limitations**

The G6 defendants argue that plaintiff cannot pursue any claims arising from events occurring before August 13, 2014, given the date this action was filed and the ten year limitations period. The running of a statute of limitations is an affirmative defense, and defendants bear the burden of proving that a claim is untimely. *Payan v. Aramark Mgmt. Servs. L.P.*, 495 F.3d 1119, 1122 (9th Cir. 2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint," meaning that "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiff alleges that she was forced to engage in commercial sex at the Mountlake Terrace Studio 6 from 2007 to 2014, with some of the trafficking occurring during the limitations period. Dkt. # 1 at ¶ 60. She argues that dismissal of any of her claims would be premature because the continuing tort doctrine may apply, which would allow her to seek recovery for harms she suffered prior to August 13, 2014, if they were sufficiently related to the harms suffered during the limitations period.

1        The continuing violation doctrine is an exception to the discovery rule of accrual

2   which allows a plaintiff to seek relief for events outside of the limitations period "as long

3   as the last act evidencing the continuing practice falls within the limitations period." *See*

4   *Bird v. Dep't of Human Servs*., 935 F.3d 738, 746 (9th Cir. 2019) (citations omitted). Prior

5   to 2002, the Ninth Circuit applied the continuing violation doctrine in two scenarios: first,

6   to a series of related acts directed at the plaintiff, one or more of which fell within the

7   limitations period and second, to the maintenance of an unlawful system, policy, or

8   practice to which the plaintiff was subjected that extended both before and during the

9   limitations period. *Bird*, 935 at 746-47. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

10  101, 114 (2002), the Supreme Court rejected an application of the "serial acts" theory,

11  holding that where discrete acts cause discrete harm, the plaintiff must bring suit in a

12  timely manner and may recover only for those acts occurring within the limitations period.

13  The Supreme Court expressly found that the continuing violation theory remains viable for

14  hostile work environment claims, but explained the distinction in a way that makes clear

15  that its application is extremely limited.

     Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993) ("As we pointed out in *Meritor* [*Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986),] 'mere utterance of an ... epithet which engenders

offensive feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115. The Supreme Court reasoned that as long the hostile or abusive acts occurring within the limitations period were related to the prior acts – *i.e.*, they were part of the same hostile work environment – they were all part of a single "unlawful employment practice" for which the employee can recover. *Morgan*, 536 U.S. at 118.

The Ninth Circuit has applied *Morgan* to bar claims predicated on discrete time-barred acts and to largely abrogate the systemic branch of the continuing violations doctrine. *See Bird*, 935 F.3d at 747-48 (collecting cases). "Except for a limited exception for hostile work environment claims," "little remains of the continuing violations doctrine" in this Circuit. *Bird*, 935 F.3d at 748. The question, then, is whether plaintiff's claims against the G6 defendants are predicated on discrete acts, each of which caused harm and was actionable at the time it occurred, or are part of a single illegal act that arises or accrues over time and may be pursued, in its entirety, as long as suit is timely filed after the last related act.

District courts in the Ninth Circuit have applied the continuing violation doctrine to sex trafficking claims under the TVPRA even after the *Bird* decision was issued in 2019. *See Doe A v. Seatac Hotels LLC*, No. C24-cv-01270-MJP, 2025 WL 474233, at *6 (W.D. Wash. Feb. 12, 2025); *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-cv-00388-IM, 2024 WL 5264652 at *3-4 (D. Or. Dec. 31, 2024); J.*M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 9

00672-KJM-JKP, 2022 WL 10626493 at *6 (E.D. Cal. Oct. 18, 2022). Two of these cases do not address *Bird* or *Morgan* at all.[3] Judge Immergut of the District of Oregon did, however, and analogized a sex trafficking claim under the TVPRA to a hostile work environment claim. She concluded that "claims of trafficking under the TVPRA often by their very nature involve repeated conduct occurring over a series of days, weeks, or more, that together forms one wrongful financial scheme." *A.B.*, 2024 WL 5264651 at *4.

The Court acknowledges that a hotelier's knowledge (or reckless disregard) of the fact that its hotel rooms are being used for sex trafficking and/or its knowing participation in a venture engaged in sex trafficking may develop through a series of acts and over a period of time. But once the requisite knowledge exists, each act of "harboring" or each receipt of a benefit from the sex trafficking venture is actionable under 18 U.S.C. ¶ 1591(a). That the unlawful conduct is repeated does not stall the running of the limitations period or make all subsequent trafficking episodes part of a single illegal act. Each discrete, actionable act starts a new clock for filing a lawsuit alleged that act. *Morgan*, 536 U.S. at 114; *Bird*, 935 F.3d at 747. Plaintiff's allegations show that she was harbored and forced to have commercial sex at the Studio 6 in Mountlake Terrace off and on between 2007 and 2014, the vast majority of that time being more than ten years before she filed this lawsuit. Plaintiff does not allege facts suggesting that the discovery rule applies or that some extraordinary circumstance prevented her from timely filing suit

---

[3] Similarly, the out-of-circuit cases cited by plaintiff do not address *Morgan*. *See Schneider v. OSG, LLC*, No. 22CV7686AMDVMS, 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024); *Ali v. Khan*, 336 F. Supp. 3d 901, 910 (N.D. Ill. 2018).

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 10

despite attempts to diligently pursue her rights. Because TVPRA claims must be brought within ten years of their accrual unless an equitable doctrine extends the period, plaintiff's claims related to trafficking prior to August 13, 2024, are time-barred.[4]

### B. Retroactive Application

In light of the statute of limitation analysis, the Court need not determine whether the TVPRA applies retroactively to claims predicated on events occurring prior to December 23, 2008.

### C. TVPRA Liability

Plaintiff's theory of the case is that the G6 defendants knew, through both their own interactions with her trafficker and Old West staff and through Old West staff's interactions with plaintiff and her trafficker, that they were harboring someone who was being compelled to engage in commercial sex (perpetrator liability) and accepted the financial benefits that arose from the situation (beneficiary liability). Although many of plaintiff's allegations regarding the G6 defendants' knowledge of sex trafficking, ownership of the Studio 6 in Mountlake Terrace, and control over the hotel's day-to-day operations are conclusory, others are more grounded and, at the pleading stage, give rise to a plausible inference that these defendants could be held directly liable for their own actions. In particular, plaintiff alleges that the G6 defendants hold seven years' worth of housekeeping, reservation, payment, and occupancy data for Studio 6 that would have

---

[4] Evidence of trafficking prior to that time will likely be relevant to establishing defendants' knowledge and/or participation in a venture engaged in sex trafficking.

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 11

alerted them of conduct consistent with, if not indicative of, sex trafficking. In addition, the G6 defendants controlled key aspects of brand operations, such as the availability of an anonymous reservation system, acceptance of cash payments on a daily basis, placement of hotels in known trafficking hubs, and the availability of internet sites used by sex traffickers, which made their hotels attractive to traffickers. They also issued corporate policies regarding the identification and reporting of human trafficking which required Studio 6 employees to report signs of trafficking to the franchisor and controlled when complaints would be made to the police. Plaintiff alleges that there were obvious and ample signs that her commercial sex activities were not simple prostitution but instead human trafficking, which would have, pursuant to corporate policy, been brought to the G6 defendants' attention. These same allegations were found sufficient to raise a plausible inference that the defendant knew or should have known that it was harboring plaintiff for sex trafficking and that it was deriving a financial benefit from her trafficker's activities in *Doe A*, 2025 WL 474233, at *4-5. The Court agrees.

In addition, plaintiff alleges that the G6 defendants are responsible for the conduct of and charged with the knowledge of the staff at the Studio 6 in Mountlake Terrace because they acted as the G6 defendants' agents. Plaintiff alleges that Studio 6 staff discussed sex trafficking with plaintiff's trafficker and would warn the trafficker when police were conducting a sweep of the hotel. According to the complaint, the staff did not bat an eye at requests for secluded rooms, daily cash rental payments, streams of buyers entering and leaving the hotel, men loitering and exchanging money, excessive sex

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 12

paraphernalia, signs of abuse and distress, or her being dragged back into the room when she tried to seek help.

The G6 defendants argue that even if the Studio 6 employees were their agents, to the extent the employees participated in or engaged in sex trafficking, such acts were outside the scope of their employment and therefore could not be imputed to the G6 defendants. *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 552 (1985). But the exception to liability for the acts of an agent applies only where the intentionally tortious or criminal acts "are not performed in furtherance of the master's business." *Kuehn v. White*, 24 Wn. App. 274, 278 (1979). There is no indication that the Studio 6 staff allowed plaintiff to be trafficked at the hotel for any purpose other than generating rental income, *i.e.*, promoting their employer's business interests.

> The test for determining whether the employee was within the course of his/her employment is stated as
>
>> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment; or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.
>
> *Dickinson v. Edwards*, 105 Wn.2d 457, 467 (1986) (*quoting Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 245 (1958)). The court emphasized the importance of the benefit to the employer in applying the test. *Dickinson*, 105 Wn.2d at 468.
>
> . . .
>
> This rule sets forth that a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the

principal if it emanated from a wholly personal motive of the agent and was done to gratify solely personal objectives or desires of the agent.

*Thompson v. Everett Clinic*, 71 Wn. App. 548, 551-53 (1993). There being no indication that the Studio 6 employees acted for their own benefit, much less for wholly personal motives or objectives, the allegations of agency are sufficient to survive a motion to dismiss.

Given the information that was in the G6 defendants' possession and the acts and knowledge of the Studio 6 employees that is imputed to the G6 defendants, the Court finds that plaintiff has plausibly alleged claims of perpetrator and beneficiary liability under the TVPRA.

## CONCLUSION

For all of the foregoing reasons, the G6 defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff may not pursue relief for trafficking that occurred at the Studio 6 in Mountlake Terrace prior to August 13, 2014. With regards to trafficking that occurred after that date, plaintiff may pursue both her perpetrator and beneficiary claims against the G6 defendants.

Dated this 22nd day of April, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART THE G6 DEFENDANTS'
MOTION TO DISMISS - 14